**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY M. FREDERICK, ) | No. C 08-2222 MMC (PR) |
| ) Plaintiff, ) | **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;** |
| ) v. ) | **GRANTING EXTENSION OF TIME; GRANTING MOTIONS TO AMEND** |
| ) CALIFORNIA DEPARTMENT ) OF CORRECTIONS AND ) REHABILITATION, ) | **PRAYER FOR RELIEF; DENYING RECONSIDERATION AS MOOT; LIFTING STAY OF DISCOVERY; REFERRING ACTION FOR** |
| ) Defendant. ) _____ ) | **SETTLEMENT PROCEEDINGS** **(Docket Nos. 47, 57, 60, 74, 79)** |

On April 29, 2008, plaintiff, a California prisoner then incarcerated at the Correctional Training Facility at Soledad and proceeding pro se, filed the above-titled civil rights action.[1] Thereafter, the Court found the complaint stated cognizable claims for injunctive relief and damages under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C.§ 12101 et seq. ("ADA"). The Court ordered the complaint served on the California Department of Corrections and Rehabilitation ("CDCR), a public entity that is a proper defendant to an ADA claim.

Now pending before the Court is CDCR's motion for summary judgment. Plaintiff

---

[1] Plaintiff currently is incarcerated at the Fenner Canyon Conservation Camp in Valyermo, California.

has opposed the motion and CDCR has filed a reply.[2] Also pending are plaintiff's motions to amend his prayer for relief and for leave to file a motion for reconsideration of the Court's order granting a stay of discovery pending a ruling on the instant motion.

## FACTUAL BACKGROUND[3]

Plaintiff claims he was denied the right to participate in CDCR's firecamp program because of a medical disability, specifically, diabetes, and that CDCR failed to accommodate plaintiff's disability by allowing him to participate in the firecamp program as a special-skills worker rather than as a firefighter.

A. The Firecamp Program

CDCR and the California Department of Forestry and Fire Protection cooperatively run a firecamp program for state inmates. (Decl. R.R. Jones Supp. Def.'s Mot. Summ. J. ("Jones Decl.") ¶ 2.) Inmate volunteers are trained as firefighters and transported to fight regional fires. (Id.) Some inmates who are ineligible to fight fires can still participate in the firecamp program as supporting special-skills workers, in positions including, inter alia, mechanics, carpenters, general maintenance and utilities workers, and cooks. (Id. ¶ 3; Decl. T. Esquer Supp. Def.'s Mot. Summ. J. ("Esquer Decl.") ¶ 4.) Special-skills workers do not have to actively fight fires, but must be able to travel with the firefighting inmates and use their special skills on location to support those inmates. (Id.)

All inmates participating in the firecamp program must be able to camp in remote locations by fires for more than a month at a time; consequently, inmates with unstable medical conditions are barred from the program. (Jones Decl. ¶ 4; Decl. Dr. Allen Supp. Def.'s Mot. Summ. J. ("Allen Decl.") ¶ 3.) A CDCR memorandum pertaining to the screening of inmates for the firecamp program sets forth medical criteria for firefighters and

---

[2] Good cause appearing, plaintiff's motion for an extension of time to oppose the motion for summary judgment will be granted. Plaintiff's opposition, filed March 22, 2010, is deemed timely.

[3] The facts in the following section are drawn from plaintiff's verified complaint and attached exhibits, and the parties' evidence submitted in support of and in opposition to the motion for summary judgment. The facts are undisputed unless otherwise noted.

special-skills workers. (Allen Decl. Ex. A.) Inmates with diabetes may participate in the firecamp program as special-skills workers, but only (1) if their diabetes is controlled by diet and exercise alone or by two specific types of medication, or (2) their diabetes is stable and asymptomatic, with no complications requiring medical assessment more often than every four months. (Allen Decl. ¶ 3 & Ex. A-7.)

On June 4, 2009, a memorandum prepared by the Chief Medical Officer at the Sierra Conservation Center ("SCC"), a prison facility with a firecamp program, notified all CDCR medical providers that, effective that date, inmates with diabetes would no longer be approved to go to firecamps. (Decl. Dr. St. Clair Supp. Reply ("St. Clair Decl.") ¶ 1 & Ex. A.) The policy was a temporary measure resulting from a bad outcome suffered by a diabetic inmate at a minimum-support facility; a firecamp is a minimum-support facility. (St. Clair Decl. ¶ 1.) Shortly thereafter, doctors again began approving diabetic inmates for firecamp placement because computerized medical tracking of inmates improved to allow identification of diabetic inmates at firecamps. The improved tracking has allowed SCC to send a doctor out into the field to provide, at least every six months, checkups for inmates with chronic medical conditions like diabetes, thereby addressing the problem that led to the June 2009 memorandum. (Id.)

B.  Plaintiff's Request for Firecamp Placement

On March 15, 2007, plaintiff was seen by Dr. Friedrichs at the Correctional Training Facility at Soledad ("CTF"), to be evaluated for possible placement in a firecamp program at another facility because CTF does not have a firecamp program. After seeing plaintiff, Dr. Friedrichs placed a medical chrono in plaintiff's medical file and told plaintiff that he did not qualify for firecamp placement because plaintiff required weekly monitoring for his non-insulin dependent diabetes and had borderline high blood pressure. (Compl. at 3 & Ex. A.) Plaintiff's appeals of Dr. Friedrich's decision were denied. Subsequently, Dr. Friedrichs contacted SCC to learn the medical criteria for firecamp participation. (Allen Decl. ¶ 5.) On July 13, 2007, Dr. Friedrichs placed a revised medical chrono in plaintiff's medical file, in which he wrote that plaintiff was medically cleared for placement in a firecamp program as a

3

special-skills worker, but that he could not fight fires. (Compl. Ex. D.)

In September 2007, plaintiff appeared before a CTF classification committee for a hearing to consider whether he should be transferred to a firecamp program. Although Dr. Friedrichs had cleared plaintiff as a special-skills worker, plaintiff's transfer was denied on the ground plaintiff could not be cleared for full firecamp duty, i.e., as a firefighter, due to his diabetes. Plaintiff's appeals of the denial were denied through the Director's level of review. (Compl. ¶ 13 & Ex. Ga.) Subsequently, plaintiff wrote to CTF Associate Warden Raso, stating he wrongly had been denied transfer to a firecamp program as a special-skills worker on the ground he has diabetes, which, plaintiff stated, was not a disqualifying condition for such position, and that he had been medically cleared for firecamp placement. Raso responded that she could not take action to help plaintiff, because only medical staff could clear him for firecamp placement. (Id.)

On January 8, 2008, P. Taporco, one of the classification committee members who had denied plaintiff's transfer to a firecamp program, placed an informational chrono in plaintiff's file, stating that Taporco had contacted SCC and learned that inmates with diabetes cannot be cleared as special-skills workers for firecamp. (Compl. at ¶ 15 & Ex. H.)

On May 15, 2008, plaintiff was again medically evaluated by a CTF doctor, Dr. Bright, and cleared for firecamp placement as a special-skills worker. (Opp'n at 8 ¶ 20 & Ex. D.) On December 12, 2008, the classification committee recommended plaintiff's transfer to the California Men's Colony ("CMC") for camp placement. (Opp'n at 8 ¶ 21 & Ex. E.) Plaintiff was transferred to CMC on April 2, 2009, and appeared before the CMC classification committee on April 16, 2009. It was noted at the classification hearing that plaintiff had work skills as a cook. Plaintiff, however, was not transferred to a firecamp program. (Opp'n at 9 ¶¶ 22-23 & Ex. F.)

On May 20, 2009, plaintiff was again medically evaluated, this time by a CMC doctor, Dr. Cain, who cleared plaintiff for firecamp placement as a special-skills worker. Plaintiff, however, was not transferred to a firecamp program. (Opp'n at 9 ¶¶ 24).

On July 22, 2009, plaintiff appeared before the CMC classification committee. He

4

questioned why he had not yet been transferred to a firecamp program as a special-skills worker, and was told that he was on a waiting list for such placement at such time as a camp position opened up at CMC. The classification committee also approved plaintiff to work as a clerk, a necessary skill requirement for qualification as a special-skills worker in a firecamp. (Opp'n at 9-10 ¶ 26 & Ex. I.)

Three months later, on August 20, 2009, plaintiff was again medically evaluated by a CMC doctor, Dr. Barber, who cleared plaintiff for placement as a special-skills worker in a firecamp program. (Opp'n ¶ 25 & Ex. H.)

On August 25, 2009, plaintiff filed an administrative appeal, asking to be transferred to the Jamestown firecamp program because the CMC firecamp program gave priority to inmates who could work as firefighters, not as special-skills workers. (Opp'n ¶ 26 & Ex. J.)

On October 10, 2009, plaintiff was transferred to 3-Yard at CMC-West to work as a clerk. The 3-Yard at CMC-West has a firecamp program, but plaintiff was not assigned to the program. (Opp'n ¶ 28.)

On November 5, 2009, plaintiff was transferred to SCC, which facility has a firecamp program. At plaintiff's classification committee meeting on November 18, 2009, however, plaintiff was told that because of his 1992 conviction for forgery he would be ineligible to work as a clerk at SCC and, consequently, he could not participate in the firecamp program as a special-skills worker. Plaintiff objected, explaining that he had previously worked as a clerk within CDCR for more than three years and also that he was qualified as a cook. (Opp'n ¶¶ 30-32 & Exs. L, M.)

On November 19, 2009, plaintiff was medically evaluated by Dr. Smith at SCC and was again cleared for placement in a firecamp program as a special-skills worker. (Opp'n ¶ 33 & Ex. N.)

On December 24, 2009, plaintiff was assigned to a culinary cook position at SCC; on February 19, 2010, he received a special-skills cook chrono from the supervising chef, stating plaintiff met the requirements for a cook position at a firecamp. (Opp'n ¶¶ 34-35 & Exs. O, P.)

5

On March 16, 2010, the SCC classification committee approved plaintiff as a special-skills worker eligible for a firecamp program based on his skills as a cook. (Esquer Decl. Supp. Reply ¶ 3 & Ex. A.)

On May 12, 2010, plaintiff was transferred to the Fenner Canyon Conservation Camp[4] in Valyermo, California. (Pl.'s Mot. to Amend Prayer for Relief (Docket No. 74).)

## DISCUSSION

A.  Plaintiff's Motions to Amend Prayer for Relief

In his complaint, plaintiff named as defendants to the instant action not only CDCR, a public entity, but also individual prison employees, and sought both injunctive relief and damages. In the order of service, the Court dismissed the individual defendants, as only public entities can be sued under the ADA. Plaintiff now moves to amend his prayer for relief to clarify that he is bringing his damages claim against CDCR based on the actions of the individual prison employees who denied his requests to participate in the firecamp program. Additionally, plaintiff moves to amend his prayer for relief to withdraw his request for injunctive relief as moot because he was transferred to the Fenner Conservation Camp on May 12, 2010. Defendant has not opposed plaintiff's motions.

Good cause appearing, plaintiff's motions to amend the prayer for relief as set forth above will be granted.

B.  Legal Standard for Summary Judgment

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc. Anderson, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

It is the moving party's burden to establish that no genuine issue of material fact exists

---

[4] Although not expressly stated by either party, the Court infers from the briefing that such facility is a firecamp.

6

and that the moving party is entitled to judgement as a matter of law. British Airways Board v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978), cert. denied, 440 U.S. 981 (1979).  Where the defendant is the moving party, the court will grant summary judgment against a plaintiff "who fails to make a showing sufficient to establish the existence of an element essential to that [plaintiff's] case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).  The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

C.   Plaintiff's Claim

As noted, plaintiff claims he was denied the right to participate in CDCR's firecamp program because of a medical disability, specifically, his diabetes, and that CDCR failed to accommodate plaintiff's disability by allowing him to participate in the firecamp program as a special-skills worker rather than as a firefighter.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

To state a claim under Title II of the ADA, a plaintiff must allege four elements: (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs

7

or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).

Although Title II of the ADA does not expressly address the provision of reasonable accommodations, one of the implementing regulations does so as follows: "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

### 1. Qualifying Disability

Under the ADA, an individual is defined as having a disability if the individual has: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2).

It is undisputed that plaintiff's diabetes qualifies as a physical impairment under the ADA.

### 2. Otherwise Qualified to Participate

Defendant argues plaintiff cannot prove a violation of the ADA because he cannot show that he was qualified to participate in the firecamp program despite his medical condition. Specifically, defendant points to evidence that at plaintiff's classification committee meeting at SCC on November 18, 2009, he was told he could be cleared for firecamp placement only if he had a special skill, but that his previous prison experience as a clerk would not qualify as such because his 1992 conviction for forgery rendered him ineligible to work at SCC as a clerk. Additionally, defendant points to evidence that shows that the classification committee did not determine until March 16, 2010, that plaintiff had special skills as a cook that qualified him for firecamp placement.

In opposition, plaintiff argues that he possessed qualifying special work skills for firecamp placement more than two years prior to the classification committee's March 2010

8

determination, and that even though prison officials were aware of and could have verified plaintiff's skills, no inquiries in such regard were made until plaintiff's November 2009 classification committee meeting, at which he was found not to have the necessary skills.

In support of his argument, plaintiff points to the following evidence: (1) a clerk is a qualifying special skill for purposes of the firecamp program (Decl. A. Mapoli Supp. Opp'n Mot. Summ. J. ¶ 1-3; Decl. J. Galed Supp. Opp'n Mot. Summ. J. ¶ 1-3); (2) in September and December of 2007, plaintiff was assigned to work as a clerk at CTF; (3) at plaintiff's annual classification review at CMC on July 22, 2009, the classification committee expressly stated that plaintiff's prior forgery conviction did not make him ineligible to work as a clerk, and reaffirmed the inmate assignment office's decision that plaintiff would be appropriate to work as a clerk (Opp'n Ex. I); (4) on October 10, 2009, plaintiff was transferred to 3-Yard at CMC-West to work as a clerk (Opp'n ¶ 28); (5) a cook is a qualifying special skill for purposes of the firecamp program (Jones Decl. ¶ 3; Esquer Decl. ¶ 4); (5) plaintiff has worked as a cook while in prison (Opp'n Exs. C, F, O); (5) plaintiff was first medically cleared for firecamp placement in July 2007, but was not told until November 2009 that the reason he did not qualify for firecamp placement was a lack of a qualifying special skill (Opp'n Exs. L, M).

Based on the above, the Court finds plaintiff has presented evidence that raises a triable issue as to whether, absent his disability, he was otherwise qualified for a position as a special-skills worker in the firecamp program.

### 3. Denied Participation in Program

It is undisputed that plaintiff was denied participation in the firecamp program from March 2007 to May 2010.

### 4. Exclusion by Reason of Plaintiff's Disability

Defendant argues plaintiff was not excluded from participating in the firecamp program as a special-skills worker because he has diabetes but, rather because (1) as set forth above, he did not have the relevant special work skills, and (2) he had ongoing health problems during the relevant time period that disqualified him from participation in the

9

1 firecamp program.

2 As noted, plaintiff has raised a triable issue with respect to defendant's first
3 contention, that plaintiff did not have the necessary work skills for participation in the
4 firecamp program.

5 With respect to defendant's argument that plaintiff was not medically qualified to
6 participate in the firecamp program, defendant relies upon the declaration of Dr. Allen, the
7 Chief Physician and Surgeon at SCC, who attests he reviewed plaintiff's medical records
8 back to 2007 and, based on the information in those records, has concluded that due to health
9 problems suffered by plaintiff during the relevant time period, the earliest date plaintiff could
10 have been medically approved for firecamp placement was November 19, 2009. (Allen Decl.
11 ¶¶ 4-7.)[5]

12 In opposition, plaintiff argues that the undisputed evidence shows he was medically
13 cleared for participation in the firecamp program by every prison doctor who saw him
14 between July 2007 and November 2009, yet prison officials consistently denied his requests
15 to participate in the firecamp program as a special-skills worker based on his diabetes.

16 In response, Dr. Allen attests that the prison doctors' medical clearances were not a
17 guarantee of medical approval for firecamp placement, but, rather, they only "suggested"
18 medical approval for camp placement and were effective in getting plaintiff moved to SCC in
19 November 2009 for final medical approval. (Decl. Allen Supp. Reply ¶¶ 4-5 & Ex. A.)
20 Dr. Allen does not cite to or present any evidence of a CDCR policy or practice that supports
21 his statement that a prison doctor's express medical approval of an inmate's participation as a
22 special-skills worker in a firecamp program is only a "suggestion" of medical approval for
23 firecamp placement.

24 Based on the above, the Court concludes defendant has failed to carry its burden of
25 establishing that no genuine issue of material fact exists with respect to whether plaintiff was

---

[5]Dr. Allen has summarized the information he states was entered into plaintiff's medical records during the relevant time period. No medical records, however, have been submitted in support of the motion for summary judgment.

10

1   excluded from participating in the firecamp program solely because he has diabetes.  In
2   particular, the undisputed evidence shows that even though plaintiff was expressly cleared
3   for firecamp placement on five occasions between July 2007 and November 2009, which
4   clearances were by prison doctors who were aware of plaintiff's diabetes and other medical
5   conditions, prison officials refused to approve plaintiff for firecamp placement, on the ground
6   he has diabetes.

        5.        <u>Deliberate Indifference</u>

As noted, plaintiff has amended his prayer for relief to delete his claim for injunctive relief, in view of his having been transferred to a firecamp program in May 2010.  Plaintiff continues, however, to seek damages for the violation of his rights under the ADA.

Damages are not available under Title II of the ADA absent a showing of discriminatory intent.  <u>See</u> <u>Ferguson v. City of Phoenix</u>, 157 F.3d 668, 674 (9th Cir. 1998). To show discriminatory intent, a plaintiff must establish deliberate indifference by the public entity.  <u>Duvall v. County of Kitsap</u>, 260 F.3d 1124, 1138 (9th Cir. 2001).  Deliberate indifference requires (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood.  <u>Id.</u> at 1139.

To satisfy the first requirement for a showing of deliberate indifference, a plaintiff must identify a specific, reasonable and necessary accommodation that the public entity has failed to provide, and must have notified the public entity of the need for accommodation. <u>Duvall</u>, 260 F.3d at 1138.  Here, plaintiff has presented evidence that on numerous occasions he requested that prison officials accommodate his disability by allowing him to participate in the firecamp program as a special-skills worker, but that they refused to do so.  From such evidence, a reasonable trier of fact could find plaintiff notified prison officials of a specific, reasonable and necessary accommodation that they thereafter failed to provide.

The second element of deliberate indifference requires a showing that the entity deliberately failed to fulfill its duty to act in response to the request for accommodation. <u>Duvall</u>, 260 F.3d at 1139-40.  To raise a triable issue of material fact as to this element, a plaintiff must present evidence sufficient to show that the entity failed to undertake a fact-

11

specific investigation, gathering from the plaintiff and qualified experts sufficient information to determine what constitutes a reasonable accommodation. Id. In conducting any such investigation, the entity is required to give "primary consideration" to the plaintiff's requests. Id.

Here, on the evidence presented, a triable issue exists as to whether prison officials failed to undertake a fact-specific investigation concerning plaintiff's qualifications to participate in the firecamp program as a special-skills worker. In particular, the evidence shows that prison officials repeatedly told plaintiff he could not participate in a firecamp program in any capacity because of his diabetes, even though plaintiff notified them of CDCR regulations to the contrary and was medically cleared for firecamp placement as a special-skills worker on numerous occasions by prison doctors.

Based on the above, the Court finds plaintiff has raised a triable issue as to his entitlement to monetary damages under Title II of the ADA.

D.  Motion for Leave to File Motion for Reconsideration of Order Staying Discovery

After the instant motion for summary judgment was fully briefed by the parties, defendant moved for a stay of discovery pending the Court's ruling on the summary judgment motion. The Court granted the stay. Plaintiff now moves for leave to file a motion for reconsideration of the Court's decision, claiming the stay should not have been imposed because defendant failed to cooperate in the discovery process. In view of the Court's ruling denying defendant's motion for summary judgment, the stay will be lifted and defendant will be ordered to respond to any outstanding discovery requests within thirty days of the date this order is filed. Consequently, plaintiff's motion will be denied as moot.

E.  Referral to Magistrate Judge for Settlement Proceedings

The court has established a program under which prisoner civil rights cases may be referred to a neutral Magistrate Judge for early settlement proceedings. The Court finds the instant matter suitable for such proceedings prior to setting the matter for trial. Accordingly, the case will be referred as set forth below.

**CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1. Defendant's motion for summary judgment is hereby DENIED. (Docket No. 47.)

2. Plaintiff's motion for an extension of time is hereby GRANTED. (Docket No. 57.)

3. Plaintiff's motions to amend his prayer for relief are hereby GRANTED. (Docket Nos. 60 & 74.)

4. Plaintiff's motion for leave to file a motion for reconsideration of the order staying discovery is hereby DENIED as moot. (Docket No. 79.)

5. The stay of discovery imposed on July 14, 2010 is hereby LIFTED. Defendant shall respond to any outstanding discovery requests within thirty days of the date this order is filed.

6. The instant matter is hereby REFERRED to Magistrate Judge Nandor Vadas for settlement proceedings. The proceedings shall take place within ninety days of the date this order is filed, or as soon thereafter as Magistrate Judge Vadas's calendar will permit. Magistrate Judge Vadas shall coordinate a place, time and date for one or more settlement conferences with all interested parties and/or their representatives and, within fifteen days of the conclusion of all settlement proceedings, shall file with the Court a report thereon.

The Clerk is directed to serve Magistrate Judge Vadas with a copy of this order and to notify Magistrate Judge Vadas that a copy of the court file can be retrieved from the court's electronic filing database (ECF).

This order terminates Docket Nos. 47, 57, 60, 74 and 79.

IT IS SO ORDERED.

DATED: September 22, 2010

_____
MAXINE M. CHESNEY
United States District Judge