1

2

3

4

5

6

7

8

9           IN THE UNITED STATES DISTRICT COURT

10         FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12   JERRY M. FREDERICK,                )   No. C 08-2222 MMC (PR)
                                        )
13          Plaintiff,                  )   **ORDER GRANTING DEFENDANT'S**
                                        )   **REQUEST FOR EXTENSION OF TIME;**
14      v.                              )   **DENYING DEFENDANT'S MOTION TO**
                                        )   **DISMISS; DENYING CROSS-MOTIONS**
15   CALIFORNIA DEPARTMENT              )   **FOR SUMMARY JUDGMENT**
     OF CORRECTIONS AND                 )
16   REHABILITATION,                    )   **(Docket Nos. 104, 128, 156)**
                                        )
17          Defendant.                  )
     _____)

18         On April 29, 2008, plaintiff, a California prisoner then incarcerated at the Correctional

19   Training Facility at Soledad ("CTF")[1] and proceeding pro se, filed the above-titled civil

20   rights action, alleging he was denied the right to participate in the California Department of

21   Corrections and Rehabilitation ("CDCR") firecamp program because of a medical disability,

22   specifically diabetes, and that CDCR failed to accommodate said disability.  Thereafter, the

23   Court granted plaintiff's application to proceed in forma pauperis, found the complaint stated

24   cognizable claims for injunctive relief and damages under Title II of the Americans with

25   Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA"),[2] and ordered the complaint

26

27

28
     _____

           [1]  Plaintiff has been paroled and currently resides in Gardena, California.

           [2]  Plaintiff subsequently withdrew his request for injunctive relief due to his eventual
     transfer to a firecamp program.  (See Docket No. 80 at 6:14-18.)

**United States District Court**
For the Northern District of California

served on CDCR.[3]

Now before the Court is defendant's motion to dismiss and motion for summary judgment ("Mot. Summ. J. II").[4]  Plaintiff has filed opposition thereto as well as a motion for summary judgment.  Defendant has filed a reply in support of its motion and has not filed an opposition to plaintiff's motion.[5]

## FACTUAL BACKGROUND[6]

A.    The Firecamp Program

CDCR and the California Department of Forestry and Fire Protection cooperatively run a firecamp program for state inmates.  (Decl. R.R. Jones Supp. Def.'s Mot. Summ. J. I ("Jones Decl. I") ¶ 2.)  Inmate volunteers are trained as firefighters and transported to fight regional fires.  (Id.)  Some inmates who are ineligible to fight fires can participate in the firecamp program as supporting special skills workers, in positions including, inter alia, mechanics, carpenters, general maintenance and utilities workers, and cooks.  (Id. ¶ 3; Decl. T. Esquer Supp. Def.'s Mot. Summ. J. I ("Esquer Decl. I") ¶ 4.)  Special skills workers are not called upon to actively fight fires, but must be able to travel with the firefighting inmates and use their special skills on location to support those inmates.  (Id.)

All inmates participating in the firecamp program must be able to camp in remote locations adjacent to fires and to do so for more than a month at a time; consequently,

---

[3]  The Court dismissed from the action all CTF employees named as individual defendants, for the reason that individuals cannot be sued directly under the ADA.

[4]  The instant motion is defendant's second motion for summary judgment in this action.  The Court denied defendant's first motion for summary judgment ("Mot. Summ. J. I") by order filed September 22, 2010.  (Docket No. 80.)  In connection with said denial, the Court referred the matter to Magistrate Judge Nandor Vadas for settlement proceedings, which proceedings took place on March 22, 2011.  The parties did not reach a settlement agreement.

[5]  Good cause appearing, defendant's request for an extension of time to file its reply will be granted.  Accordingly, the reply is deemed timely.

[6]  The facts in the following section, which facts are undisputed unless otherwise noted, are drawn from plaintiff's verified complaint and exhibits attached thereto, as well as the parties' evidence submitted in support of and in opposition to the various motions for summary judgment.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  inmates with unstable medical conditions are barred from the program.  (Jones Decl. I ¶ 4;

2  Decl. Dr. Allen Supp. Def.'s Mot. Summ. J. I ("Allen Decl. I") ¶ 3.)  A CDCR memorandum

3  pertaining to the screening of inmates for the firecamp program sets forth medical criteria for

4  firefighters and special-skills workers.  (Allen Decl. I Ex. A.)  Inmates with diabetes may

5  participate in the firecamp program as special skills workers, but only if (1) their diabetes is

6  controlled by diet and exercise alone or by two specified medications, or (2) their diabetes is

7  stable and asymptomatic, with no complications requiring medical assessment more often

8  than once every four months.  (Allen Decl. I ¶ 3 & Ex. A-7.)

9         B.     <u>Plaintiff's Request for Firecamp Placement</u>

10        On March 15, 2007, plaintiff was seen by T. Friedrichs, M.D., staff physician at CTF-

11  Soledad ("Dr. Friedrichs"), to be evaluated for possible placement in a firecamp program at

12  another facility, as CTF does not have a firecamp program.  (Compl. 3 & Ex. A; Allen Decl. I

13  ¶ 5.)  That same date, after seeing plaintiff, Dr. Friedrichs placed a medical chrono in

14  plaintiff's medical file and told plaintiff he did not qualify for firecamp placement because

15  plaintiff required weekly monitoring for his non-insulin dependent diabetes and had

16  borderline high blood pressure.  (Compl. at 3 & Ex. A.)

17        On March 21, 2007, plaintiff submitted an administrative grievance, identified by Log

18  Number CTF-S-07-01179, to CTF's Inmate Appeals Office.  (Decl. K. Roost Supp. Def.'s

19  Mot. Summ. J. II ("Roost Decl. II") Ex. D.)  Therein, plaintiff argued it was unusual for him

20  to have high blood pressure, and requested he be allowed to participate in firecamp "as a

21  special skills worker."  (<u>Id.</u>)  On April 24, 2007, the grievance was denied, based on the

22  above-referenced medical chrono.  (<u>Id.</u>)

23        On June 21, 2007, Dr. Friedrichs advised plaintiff that he would call different

24  firecamps to see if they could monitor his diabetes safely, and scheduled a follow-up

25  appointment in July.  (Compl. 3.)

26        On July 3, 2007, a Unit Classification Committee ("UCC") met with plaintiff to

27  evaluate his request for firecamp placement, and rejected the request based on Dr.

28  Friedrichs's denial of medical clearance.  (Roost Decl. II Ex. C-1.)

United States District Court

For the Northern District of California

Dr. Friedrichs saw plaintiff as scheduled on July 13, 2007. (Compl. 3-3b.) Dr. Friedrichs made note that he had contacted Sierra Conservation Center ("SCC") to learn the medical criteria for firecamp participation as a special skills worker. (Allen Decl. I ¶ 5.) On July 13, 2007, Dr. Friedrichs placed a revised medical chrono in plaintiff's medical file, in which he wrote that plaintiff was medically cleared for placement in a firecamp program as a special skills worker, but that plaintiff could not fight fires. (Compl. Ex. D.)

Thereafter, plaintiff appealed the denial of his grievance to the Director's Level, pointing out he was now medically cleared to participate in firecamp as a special skills worker. (Compl. Ex. E.) On August 13, 2007, the Director's Level determined correctional staff had "acted appropriately on [plaintiff's] request."

C.      Plaintiff's September 2007 UCC Hearing

On September 25, 2007, plaintiff appeared before another UCC for a hearing to consider whether he should be transferred to a firecamp program. (Compl. 3b; Opp'n Summ J. II ("Opp'n") at 11-12, 23.) On this occasion, the classification committee members were Captain R. Pope ("Pope") and Counselor P. Taporco ("Taporco"). (Id.) At the hearing, Taporco reasoned that an inmate who could not fight fires would be unable to participate in firecamp, and Pope, who chaired the committee, was unsure. (Roost Decl. II Ex A at 52:21-25; 55:18-24.)

To investigate whether plaintiff could participate in firecamp as a special skills worker, Pope made a phone call during the hearing and placed the call on speaker phone, but there was no answer. (Id. at 53:1-4.)[7] The committee then asked plaintiff to step out of the hearing room while it met with another inmate. (Id. at 53:22-24, 58:5-7.) After approximately fifteen minutes, Taporco came outside the hearing room and told plaintiff the transfer was not approved. (Id. at 58:18-25.)

On October 7, 2007, plaintiff submitted an administrative grievance, challenging the

_____

[7] The facts pertaining to the September 2007 UCC hearing are taken from plaintiff's deposition in this action. (Roost Decl. II Ex. A.) Plaintiff does not recall the person or prison to whom the call was placed. (Id. at 53:5-18.)

4

United States District Court
For the Northern District of California

1  UCC's decision and again asking to be transferred to a firecamp as a special-skills worker.

2  (Compl. Ex. F.)  The Appeals Coordinator screened out the grievance, finding it duplicative

3  of plaintiff's previously filed grievance.  (Compl. Ex. Fa.)  Plaintiff resubmitted the

4  grievance, stating his current appeal was limited to a request for transfer as a special skills

5  worker whereas his earlier appeal was broader.[8]  (Compl. Ex. Fb.)  The Appeals Coordinator

6  again screened out the grievance, in this instance because plaintiff had failed to attach thereto

7  a Form 128G, the form used to document  UCC actions.  (Compl. Ex. Fc; Decl. P. Mullen

8  Supp. Def.'s Mot. Summ. J. II ("Mullen Decl. II") ¶ 11.)  Plaintiff did not re-submit the

9  grievance.  (Roost Decl. II Ex. A at 247:10-19, 248:8-11.)

10      D.      Taporco's Subsequent Inquiry

11          On January 8, 2008, Taporco placed an "Informational Chrono" in plaintiff's central

12  file stating the following:

> On 1-08-08, I contacted Zona Allen ["Allen"] the C&PR [Classification and
> Parole Representative] at SCC concerning inmates that are not medically
> cleared for Camp but are cleared for a special skills position in camp, and her
> answer was not if the inmate is a diabetic.

16  (Compl. Ex. H.)

17          Defendant admits the information Taporco received was "partly inaccurate," because,

18  although Type 1 diabetics, i.e., diabetics dependent on insulin, cannot program in firecamp,

19  Type 2 diabetics, i.e., non-insulin dependent diabetics, with stable health can participate in

20  firecamp as special skills workers.  (Mot. Summ. J. II at 11; Allen Decl. I ¶ 3, Ex. A-7.)

21  Plaintiff is not dependent on insulin, and as discussed above, was medically cleared to

22  participate in firecamp.  (Compl. at 3d.)

23      E.      Plaintiff's Eventual Transfer to Firecamp

24          On May 15, 2008, plaintiff was again medically evaluated by a CTF doctor, D. Bright,

25  M.D., and cleared for firecamp placement as a special skills worker.  (Pl. Decl. Supp. Pl. Mot

26  Summ. J. ("Pl. Decl.") Ex. F.)  On April 2, 2009, plaintiff was transferred to the California

27

28          [8]  In his initial appeal, plaintiff stated: "I am not seeking to go to fire camp as only a
fire fighter but as a special skills worker . . . ."  (Roost Decl. II Ex. D.)

United States District Court

For the Northern District of California

Men's Colony ("CMC"), which offered a single firecamp.  (Decl. D. Ramirez  Supp. Def.'s Mot. Summ. J. II ("Ramirez Decl. II") Ex. A; Decl. J. Simmons Supp. Def.'s Mot. Summ. J. II ("Simmons Decl. II") ¶ 2.)  Plaintiff was not moved to the firecamp at CMC, due primarily to limited openings.  (Pl. Decl. Supp. Opp'n Mot. Summ. J. II ("Pl. Opp'n Decl.") Ex. F.)  On November 5, 2009 plaintiff arrived at SCC, and in May 2010, was transferred to a firecamp at SCC.  (Ramirez Decl. II Ex. A; Roost Decl. II Ex. A at 181:7-9.)[9]

## DISCUSSION

A.     Defendant's Motion to Dismiss

Defendant argues plaintiff's complaint must be dismissed, on the asserted ground plaintiff failed to exhaust his administrative remedies as required under 42 U.S.C. § 1997(e). Specifically, defendant argues plaintiff only exhausted an administrative appeal with respect to Dr. Friedrichs's initial refusal to medically clear him for firecamp, and contends any claims based on the UCC's denial of plaintiff's subsequent request to transfer are subject to dismissal.  (Id.)

1.     Legal Standard

Non-exhaustion under § 1997e(a) is an affirmative defense; defendants have the burden of raising and proving the absence of exhaustion.  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  A defense based on lack of exhaustion is raised in an unenumerated Rule 12(b) motion.  Id.  In deciding such a motion, the district court may look beyond the pleadings and decide disputed issues of fact.  Id. at 1119-20.  If the court concludes the prisoner has failed to exhaust nonjudicial remedies, the complaint is subject to dismissal without prejudice.  Id. at 1120.

---

[9] In addition to the above facts, the parties provide documentation of various delays in plaintiff's firecamp placement occurring subsequent to the filing of the instant complaint. The only issue presented by the complaint is whether the classification committee action taken by Pope and Taporco in September 2007 violated plaintiff's rights under the ADA, and plaintiff has not sought leave to file a supplemental complaint alleging ongoing discrimination based on later denials of his transfer requests.  Accordingly, the Court has not included in the background section herein a description of any such later actions.

United States District Court
For the Northern District of California

2.      Exhaustion Requirement

The Prison Litigation Reform Act of 1995 ("PLRA") provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is mandatory and not left to the discretion of the district court.  Woodford v. Ngo, 548 U.S. 81, 85 (2006).  "Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures."  Id. at 89 (internal quotation and citation omitted). Exhaustion of all "available" remedies is mandatory; such remedies "need not meet federal standards, nor must they be plain, speedy, and effective."  Porter v. Nussle, 534 U.S. 516, 524 (2002) (internal quotation and citation omitted).

The State of California provides its prisoners the right to appeal administratively "any policy, decision, action, condition, or omission by [CDCR] or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." 15 CCR § 3084.1(a).  In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal review, submitted on a CDC 602 inmate appeal form; (2) first formal level appeal, to an institution appeals coordinator; (3) second formal level appeal, to the institution warden; and (4) third formal level appeal, to the Director of CDCR.  See CCR § 3084.7; Brodheim v. Cry, 584 F.3d 1262, 1264-65 (9th Cir. 2009).  A final decision from the Director's Level of review satisfies the exhaustion requirement under § 1997e(a).  See id. at 1265.

The exhaustion requirement cannot be satisfied by the filing of an untimely or otherwise procedurally defective administrative grievance or appeal.  See Woodford, 548 U.S. at 84.  Rather, "proper exhaustion" of available administrative remedies is required.  Id. at 92.  The requirements of the prison's grievance process, not the PLRA, define the boundaries of proper exhaustion.  Jones v. Bock, 549 U.S. 199, 218 (2007).

United States District Court
For the Northern District of California

3.      Exhaustion of Remedies by Plaintiff

Defendant's exhaustion argument is based on its assertion that plaintiff's first grievance, identified by Log Number CTF-S-07-01179, was limited to plaintiff's request for medical clearance as a preliminary step to participation in firecamp, as opposed to his subsequent request for placement in firecamp as a special skills worker.  (See Mot. Summ. J. II at 17.)[10]  Defendant acknowledges plaintiff raised the first of these assertedly discrete claims in an administrative appeal and that plaintiff pursued said appeal through the Director's Level of review, thereby exhausting the claim.  Defendant argues, however, said appeal "did not exhaust the subsequent action by a classification committee . . . to deny [plaintiff] transfer to a firecamp despite his medical clearance."  (Id.)

The exhaustion requirement of the PLRA is intended to serve a number of purposes, including providing an opportunity for correction officials to address complaints internally, deterring frivolous lawsuits, and creating an administrative record allowing courts to evaluate the relative merits of claims.  See Porter, 534 U.S. at 525.  The primary purpose, however, "is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation."  Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).

"[A] prison's own grievance process, not the PLRA, determines how detailed a grievance must be to satisfy the PLRA exhaustion requirement."  Id.  Under the current Code of Regulations, an inmate is required to "describe the specific issue under appeal and the relief requested."  See 15 CCR § 3084.2.  The version of § 3084.2 in effect when plaintiff filed his administrative appeal provided even less direction, instructing the inmate "to describe the problem and action requested."  See 15 CCR § 3084.2 (amended 2011).  Where "a prison's grievance procedures are silent or incomplete as to factual specificity," as is the case here, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought."  See Morton v. Hall, 599 F.3d 942, 946 (9th Cir. 2010) (internal quotation

_____

[10] Plaintiff's grievance based on such subsequent request is not identified by log number herein, as log numbers are not assigned to screened out appeals.  (See Compl. Exs. Fa, Fc.)

8

1   and citation omitted).  Such grievance "need not contain every fact necessary to prove each

2   element of an eventual legal claim."  <u>Griffin</u>, 557 F.3d at 1120.

3          Here, contrary to defendant's assertion, plaintiff's exhausted appeal, Log Number

4   CTF-S-07-01179, was not merely a request for medical clearance.  In the section of the

5   grievance form directing inmates to "describe the problem," plaintiff explained that Dr.

6   Friedrichs had refused to clear him "for firecamp."  (Compl. Ex. B.)  Further, in the section

7   directing inmates to specify the "accommodation requested," plaintiff made clear that he was

8   "seeking to go to fire camp . . . as a special skills worker," and specifically requested the

9   option of going to the fire camp at CMC.  (<u>Id.</u>)  At later levels of review as well as at his July

10  2007 hearing by the UCC, plaintiff continued to request firecamp placement.  (Roost Decl. II

11  Exs. C-1, D; Compl. Ex. E.)  Indeed, Associate Warden V. Raso, in her second level review

12  decision of plaintiff's initial grievance, acknowledged that plaintiff was requesting "to be

13  considered for Fire Camp as a skill[s] worker" (Roost Decl. II Ex. D-8), and the Director's

14  Level decision acknowledged that plaintiff "believes he should not be excluded from fire

15  camp as he wants to be not only a firefighter but a special skills worker" (Compl. Ex. E).

16         In sum, the problems about which plaintiff notified corrections officials in his

17  exhausted administrative appeal are the same as those alleged in the instant action,

18  specifically, that CDCR erroneously denied him placement in a firecamp as a special skills

19  worker and did so based solely on his diabetes.

20         Accordingly, defendant's motion to dismiss will be denied.

21  B.     <u>Cross-Motions for Summary Judgment</u>

22         1.     <u>Legal Standard</u>

23         Summary judgment is proper where the pleadings, discovery, and affidavits show

24  there is "no genuine dispute as to any material fact and the movant is entitled to judgment as

25  a matter of law."  <u>See</u> Fed. R. Civ. P. 56(a).  Material facts are those that may affect the

26  outcome of the case.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A

27  dispute as to a material fact is genuine if the evidence is such that a reasonable jury could

28  return a verdict for the nonmoving party.  <u>See</u> <u>id.</u>

United States District Court

For the Northern District of California

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Id. The burden then shifts to the nonmoving party to "go beyond the pleading, and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" See id at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv., Inc., v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

    2.    Defendant's Motion for Summary Judgment

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To meet its obligations under Title II of the ADA, a public entity is required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

To state a claim under Title II of the ADA, a plaintiff "must allege four elements:

10

United States District Court

For the Northern District of California

(1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002) (citing Weinreich v. L.A. County Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir.1997)).

Damages are not available under Title II of the ADA absent a showing of discriminatory intent. See Ferguson v. City of Phoenix, 157 F.3d 668, 674 (9th Cir. 1998).[11] To show discriminatory intent, a plaintiff must establish the public entity acted with "deliberate indifference." Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). Deliberate indifference requires both (1) "knowledge that a harm to a federally protected right is substantially likely," and (2) "a failure to act upon that likelihood." Id. at 1139.

To satisfy the first element of deliberate indifference, a plaintiff must identify "specific reasonable and necessary accommodations that [the public entity] failed to provide," and must have "alerted the public entity to his need for accommodation." Duvall, 260 F.3d at 1139 (internal quotation and citation omitted). Here, plaintiff has presented evidence that he requested prison officials accommodate his disability by allowing him to participate in the firecamp program as a special skills worker, and that they refused to do so. From such evidence, a reasonable trier of fact could find plaintiff notified prison officials of a specific, reasonable and necessary accommodation that they thereafter failed to provide.

The second element of deliberate indifference requires a showing that the entity deliberately failed to fulfill its duty to act in response to the request for accommodation. Duvall, 260 F.3d at 1139-40. To raise a triable issue of material fact as to this second element, a plaintiff must present evidence sufficient to show the public entity failed to "undertake a fact-specific investigation." Id. at 1139. In that regard, the public entity has a

---

[11] Here, as noted above, plaintiff has withdrawn his request for injunctive relief, limiting the relief sought to damages.

"duty to gather sufficient information from the [disabled individual] and qualified experts as needed to determine what accommodations are necessary." Id. (internal quotation and citation omitted) (alteration in original). In conducting any such investigation, the entity is required to give "primary consideration" to the plaintiff's requests. Id.

Defendant argues that, at the September 2007 UCC hearing, Pope placed a call to investigate whether plaintiff could participate in firecamp as a special skills worker. (Mot. Summ. J. II at 23.) Defendant admits that no one answered the call and that plaintiff's transfer request was denied that same day. (Id.) Defendant argues, however, that "this did not mark the end of the committee's investigation." (Id.) Specifically, defendant points to evidence that, on January 8, 2008, Taporco contacted SCC and was told diabetic inmates cannot be cleared as special skills workers for firecamp. (Id.)

As noted above, on January 8, 2008, Taporco placed an "Informational Chrono" in plaintiff's central file stating the following:

> On 1-08-08, I contacted Zona Allen the C&PR at SCC concerning inmates that are not medically cleared for Camp but are cleared for a special skills position in camp, and her answer was not if the inmate is a diabetic.

(Compl. Ex. H.) As set forth below, the Court finds said Informational Chrono is insufficient to establish the absence of a triable issue as to whether defendant conducted an adequate investigation, and no other evidence is identified by defendant in support of its argument on the issue.

First, Taporco made the call to SCC in January 2008, several months after the September 2007 UCC hearing at which plaintiff's transfer request was again denied. Defendant cites to no CDCR policy or practice, or any other evidence, suggesting the 2008 inquiry was, or even could be, part of the UCC's September 2007 placement decision.

Further, defendant offers no evidence elaborating on the content of the subject conversation between Taporco and Allen that resulted in the "partly inaccurate" information Taporco received. The Court has before it no evidence regarding, for example: (1) whether Taporco spoke to Allen about different categories of diabetics and whether they are treated differently for purposes of firecamp placement; (2) whether Taporco informed Allen that

United States District Court

For the Northern District of California

1   plaintiff was a non-insulin dependent diabetic; or (3) whether Taporco informed Allen that

2   plaintiff already had been medically cleared to go to firecamp as a special skills worker.

3   Indeed, plaintiff has presented undisputed evidence that Taporco never asked plaintiff

4   whether his diabetes was Type I or Type II.  (Roost Decl. II Ex. A at 93:9-96:2.)  Under such

5   circumstances, defendant has not met its burden of showing no triable issue exists as to

6   whether CDCR gathered "sufficient information from [plaintiff] and qualified experts as

7   needed to determine what accommodations are necessary."  See Duvall, 260 F.3d at 1139-40.

8        Moreover, plaintiff, in support of his opposition, has submitted the following

9   evidence: (1) Dr. Friedrichs, as early as June or July 2007, had already called SCC and

10   learned that plaintiff could participate in firecamp as a special skills worker, which

11   information resulted in plaintiff's medical clearance on July 13, 2007 (Compl. 3 & Ex. D);

12   (2) Pope and Taporco had received ADA training from CDCR (Roost Decl. II Ex. L);

13   (3) Pope was previously employed at CMC, where he sat on classification committees

14   assigning inmates to that prison's firecamp (id.); (4) at the September 2007 UCC hearing,

15   plaintiff attempted to inform Pope and Taporco that, under the ADA, he could attend

16   firecamp as a special skills worker (Pl. Decl. Ex. C(b)); and (5) prior to the September 2007

17   UCC hearing, plaintiff met with Taporco to show him Dr. Friedrichs's chrono granting

18   medical clearance as well as plaintiff's own research into firecamp policy, but Taporco

19   accused plaintiff of forging the chrono and stating he did not want to see the research (Pl.

20   Opp'n Decl. Ex. D at 62:1-69:2).

21        On the record presented, the Court finds a triable issue exists as to whether plaintiff is

22   entitled to money damages under Title II of the ADA.

23        Accordingly, defendant's motion for summary judgment will be denied.

24        3.     Plaintiff's Cross-Motion for Summary Judgment

25        In his cross-motion for summary judgment, plaintiff argues he has produced sufficient

26   evidence to establish each of the above-listed four elements of a claim brought under Title II

27   of the ADA.  As discussed above, both parties have submitted evidence with respect to the

28   relevant issues, and, on that record, the Court finds a triable issue remains to be resolved.

13

1    Accordingly, plaintiff's cross-motion for summary judgment will be denied.

2                                              **CONCLUSION**

3    For the foregoing reasons, the Court orders as follows:

4    1.  Defendant's motion for an extension of time to file a reply is hereby GRANTED.

5    2.  Defendant's motion to dismiss is hereby DENIED.

6    3.  Defendant's motion for summary judgment is hereby DENIED.

7    4.  Plaintiff's cross-motion for summary judgment is hereby DENIED.

8    5.  No later than **April 20, 2012**, defendant shall inform the Court whether it is of the

9    opinion that the remaining claims have the potential for resolution by another settlement

10   conference.  If so, the Court will issue an order of reference for such purpose.

11   This order terminates Docket Numbers 104, 128, and 156.

12   IT IS SO ORDERED.

13   DATED: March 30, 2012

14                                      _____
                                        MAXINE M. CHESNEY
15                                      United States District Judge

**United States District Court**
For the Northern District of California

14